IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON  DIVISION

ERIC TATE                                                              PETITIONER

VERSUS                                    CIVIL ACTION NO.  3:10CV678- CWR-LRA

STATE OF MISSISSIPPI                                              RESPONDENT

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Eric Tate was convicted in the Circuit Court of Amite County, Mississippi, and

seeks federal habeas relief under 28 U.S.C. § 2254.  The Court finds that the petition

should be dismissed because the State court's ruling was not contrary to, or an

unreasonable application of, clearly established federal law.

**Factual and Procedural Background**

Petitioner was convicted of one count of sexual battery and two counts of fondling

his minor stepdaughter, Brittany,[1] from approximately June 2006 through July 2007.  He

was sentenced to 30 years imprisonment on the sexual battery conviction and ten-year

terms on each of the child-fondling convictions, all to be served consecutively.

Aggrieved, he appealed and asserted the trial court committed five errors at trial, only one

of which he raises in the instant petition for relief.  The Mississippi Supreme Court

affirmed Tate's convictions and sentences in a written opinion on October 29, 2009.  *Tate

v. State*, 20 So.3d 623, 626-629 (Miss. 2009).  The facts are set forth in great detail in the

---

[1]The Mississippi Supreme Court used a pseudonym to protect the victim's true identity
due to the nature of this case.

opinion and will not be repeated herein.  On November 19, 2010, Tate filed the instant

petition for habeas relief raising the following as his sole ground for relief:

> The State erred by not granting a mistrial when the prosecution commented
> on appellant's right not to testify.[2]

## Standard of Review

This Court's review of Petitioner's claims for federal habeas relief is governed by

the Antiterrorism and Effective Death Penalty Act  ("AEDPA") of 1996.  Under the Act,

this Court cannot grant a petitioner federal habeas corpus relief for any claim that was

adjudicated on the merits in a state court proceeding, unless the adjudication:

> (1)   resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).  Under 28 U.S.C. § 2254(d)(1), this court reviews questions of law

as well as mixed questions of law and fact, while questions of fact are reviewed under 28

U.S.C. § 2254(d)(2).

Under the first prong, the clauses "contrary to" and "unreasonable application of"

are independent bases for granting federal habeas relief.  *Williams v. Taylor*, 529 U.S.

362, 405 (2000).  A state court's decision is "contrary to" federal law if it contradicts

Supreme Court precedent or reaches a different result on materially indistinguishable

---

[2]ECF No. 1, p. 4.

facts. *Id.* Under the "unreasonable application" clause, a federal habeas court may grant relief if the state court "correctly identifies the governing legal principle" but then "unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685 694 (2002). The state court's decision must be objectively unreasonable, not merely erroneous or incorrect. *Rompilla v. Beard*, 545 U.S. 374, 380 (2005).

AEDPA's second prong requires that federal courts defer to a state court's factual determinations unless they are based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Deference is critical because federal courts have no authority to grant habeas corpus relief simply because "we conclude, in our independent judgment, that a state supreme court's application of [federal] law is erroneous or incorrect." *Catalan v. Cockrell*, 315  F.3d 491, 493 (5th Cir. 2002). Thus, we presume the state court's determination of a factual issue is correct, unless a petitioner rebuts the presumption with clear and convincing evidence. *See* 28 U.S. C. § 2254 (e)(1).

**Discussion**

Tate's sole ground for federal review is that the state court erred in failing to grant a mistrial because the prosecutor, during closing argument, allegedly made improper remarks regarding Tate's failure to testify. Tate cites the following record exchange as evidence that the prosecutor improperly commented on his failure to testify contrary to the U.S. Supreme Court's directives in *Griffin v. California*, 380 U.S. 609 (1965):

Prosecutor:   Ladies and gentlemen, let me make one thing crystal clear to you before I say anything else.  If every one of you go back in that jury room when we get through and vote not guilty, I will go home tonight and sleep like a baby.  There's absolutely no way on what he's talking about this case was going to go to trial on these facts.  All this business about if they'd have known this or if they had done that, this case was going to trial on these facts.  I hate these cases.  I hate them.  I've been doing this for twenty years, and I hate these cases worse than anything else I do, and I'm going to tell you why, ladies and gentlemen.  Because when people do this kind of stuff to children, they don't do it in front of anybody.  They don't do it in front of other people.  So what I end up with when it really gets down to ***it is her word against his***.  Think about it.  They're not going to do it in front of the sheriff.  They're not going to do it front of the preacher.  They're not even going to do it in front of their wife. . . .

Defense Counsel:  Judge, I'm going to object.

Prosecutor: -- it's not impossible.

Defense Counsel:   We need to approach. (After a bench conference out of the hearing of the court reporter and the jury, the following was made of record, to wit:)

COURT:   Let's go ahead and proceed.

Prosecutor:   So when you have a case like this, ladies and gentleman -- and don't get me wrong.  Mr. Knott is a very, very talented lawyer.  He's done a good job, and he's done what he's supposed to do here today, and that's to try to defend his client to the best of his ability, but what happens in this [sic] cases is you've got to make the child the bad person.  That's the only way it works.  ***It's her word against his, and as he says*** --

Defense Counsel:  Objection, Your Honor.

COURT:   I sustain that objection, Mr. Harper.

Prosecutor:  I am not sure what I am doing wrong here, Judge.

COURT:   Approach the bench. (After a bench conference, out of the hearing of the court reporter and the jury, the following was made of record, to -- wit:)

COURT:   Let the record show I sustain that objection.  Ladies and gentlemen, you're to disregard that last argument and remark

of the prosecutor.  Let's go ahead and proceed.[3]

(Emphasis added by Petitioner).

Once the jury was dismissed for deliberations, defense counsel moved for a mistrial based on the above remarks.  Tate's argument, both in state court and in the instant petition, is that notwithstanding the trial court's sustaining his objection to the prosecutor's comments and *sua sponte* informing the jury to disregard them, the prosecutor improperly commented on his failure to testify in violation of his Fifth Amendment right to remain silent.  Tate specifically highlights the prosecutor's use of the phrase: "her word against his" as evidence that he was tactically pitting the victim's testimony against Tate's failure to testify.  He additionally argues that the Mississippi Supreme Court's rejection of this argument was error because the court failed to fully conduct the two-part test for determining the propriety of such remarks in compliance with clearly established federal law.

The United States Supreme Court has long held that the Fifth Amendment prohibits a prosecutor from commenting on a defendant's failure to testify, *Griffin*, 380 U.S. at 615, and that "[t]he test for determining whether a prosecutor's remarks constitute a comment on a defendant's silence is a twofold ***alternative*** one: '(1) whether the prosecutor's manifest intent was to comment on the defendant's silence, ***or*** (2) whether the character of the remark was such that the jury would naturally and necessarily construe it as a comment

---

[3]ECF No. 11-4, pp. 10-11.

on the defendant's silence.*"* *United States v. Collins*, 972 F.2d 1385, 1406 (5th Cir. 1992) (emphasis added) (quoting *United States v. Jones*, 648 F.2d 215, 218 (5th Cir. 1981)). With respect to the first inquiry, the Fifth Circuit has held that "[t]he prosecutor's intent is not manifest if there is some other, equally plausible explanation for the remark." *United States v. Rosenberger*, 500 F.App'x 389 (5th Cir. 2012) (quoting *Cotton v. Cockrell*, 343 F.3d 746, 751 (5th Cir. 2003)). As to the second inquiry, "the question is not whether the jury possibly or even probably would view the challenged remark in this manner, but whether the jury necessarily would have done so." *Collins*, 972 F.2d at 1406 (quoting *United States v. Carrodeguas*, 747 F.2d 1390, 1395 (11th Cir.1984)). On habeas review, we are cautioned to consider the prosecutor's remarks "in the context of the case in which they are made." *Hernandez v. Thaler*, 440 F. App'x 409, 416 (5th Cir. 2011) (quoting *United States v. Johnston*, 127 F.3d 380, 396 (5th Cir.1997)) (citations omitted). We are also counseled that the Fifth Amendment is not violated when the comments are made in a "fair response to a claim made by defendant or his counsel." *United States v. Robinson*, 485 U.S. 25, 32 (1998).

The transcript in this case reflects clearly that the defense's strategy was to discredit the victim and to paint Tate as the victim of false accusations. Throughout the trial, the defense characterized the victim as an untrustworthy and confused child with disciplinary problems, who was not only jealous of her mother's relationship with her stepfather, but incapable of discerning the difference between touches of a sexual and non-sexual nature.

Defense counsel also cross-examined the victim at length about inconsistences between her written statement and trial testimony, and repeatedly suggested that she had confused or mischaracterized a family portrait in which her stepfather was holding her as an example of his inappropriate touching.  In addition, in opening and closing arguments, he argued that while the victim's mother initially believed her daughter's claims and even signed a criminal affidavit to that effect, she rightfully changed her mind once she reflected on her daughter's capacity for truthfulness.  The victim's mother, one of only two witnesses for the defense, acknowledged on cross-examination, however, that before changing her mind, she prepared and delivered the following statement to the sheriff's department after confronting Tate:

> . . . . To whom it may concern.  This is a statement about the conversation that I had with Eric Tate.  My son had the phone, and I grabbed it from him. I said hello twice, and Eric said, "Hey, it's me," and how was I and the boys. I said how the F you think we're doing.  He said he was sorry.
>
> . . . . .I said what did you do to [Brittany], and he said all the things she said I did, I did not do.  I told him just doing anything was wrong.  I told him charges has [sic] been filed.  Tell– he said tell his boys he loved them.  Told me to continue to take care of the his boys and don't bring them to his funeral, and then he hung up the phone.[4]

Notwithstanding her written statement, Mrs. Tate insisted that she never actually believed her daughter's claims to be true, but only signed the charging affidavit because she felt obligated to have the matter investigated further.

---

[4]ECF No. 11-3, p.124.  The Court finds it significant to point out that the defense's motion for a mistrial came after the jury sent a note during deliberations requesting to review, *inter alia*, Mrs. Tate's written statement, which had only been marked for identification.  The trial court denied their request and instructed them to continue deliberating based on the evidence before them.  ECF No. 11-4, pp. 21-25.

In rejecting this assignment of error on direct appeal, the Mississippi Supreme

Court reasoned as follows:

> . . . . [T]he district attorney was responding to comments made by defense counsel during closing arguments. Tate's theory was that Brittany could not be believed. Curtileniea testified that Brittany did not like to be disciplined by Tate, that Brittany may have felt she had been wrongly accused by her mother of taking $100 from her mother's purse, and that Brittany may have been upset because Curtileniea had believed Tate's denial of taking the money over her denial of taking the money. Thus, for one or both of these reasons, Curtileniea believed Brittany was falsely accusing Tate of these sexual improprieties. Likewise, the defense offered the testimony of young Megan Grant, who stated that Brittany had falsely accused Tate of sexually abusing her (Megan), a claim which Megan denied.

> During closing arguments, defense counsel referred to Brittany as "a problem child." Defense counsel talked to the jury about the problems which arise when parents are not able to discipline a child for that child's misconduct, and when a child "starts taking from her natural mother." Defense counsel argued to the jury that problems arise with a child when that child "feels like her mother does not love her," and that child "does not approve of the mother's husband, and thinks that the stepfather is treating her differently." Defense counsel accused Brittany of not telling the truth and stated that there were too many inconsistencies in her stories. Defense counsel reminded the jury that Brittany had stated the sexual abuse by Tate continued over a long period of time, but she had never told her mother about what Tate was doing to her because she had felt that her mother would not believe her. According to defense counsel, the reason that Brittany did not think her mother would believe her was because she had lied to her mother before. Likewise, defense counsel reminded the jury that Brittany did not tell Dr. Gray about Tate inserting the vibrator into her on several occasions, thus, Brittany's testimony about the vibrator was not believable. Additionally, defense counsel argued that "[t]he charges were filed by the mother, [b]ut when she began to think about and review this carefully in her mind, she realized this did not occur." Finally, defense counsel told the jury that "[w]hen you're charged with something you did not do, that person, whether it's me, you or anyone, becomes the victim in this case. Eric Tate, the executive steward of Sonoco, is the victim in this case."

> ***When the district attorney stood to address the jury in the rebuttal portion of the State's closing arguments, the jury had before it not only these comments by defense counsel, but also the testimony of Curtileniea Tate. During the defendant's case in chief, Curtileniea had testified on direct examination that Tate had denied "doing anything to [Brittany]."***

> . . . .

> While we respect and appreciate the caution exercised by the trial judge in sustaining defense counsel's objection and *sua sponte* instructing the

8

jury to disregard the district attorney's statements, *it is apparent from the record that the district attorney's statements were not impermissible comments calculated to improperly call the jurors' attention to the fact that Tate had failed to testify in his own behalf. Instead, the comments were offered in an effort to counter Tate's efforts at a defense* . . . .. It is likewise apparent from the record *that the prosecutor was properly responding to defense counsel's closing arguments regarding the defense theory that Tate "did not do it" and that Brittany was lying. We also are mindful that Curtileniea testified that Tate had "denied doing anything" to Brittany.* Thus, from the totality of the record before us, the district attorney was justified in responding to defense counsel's comments during closing arguments. . . . . [W]e find that these comments were not improper. . . . .

*Tate*, 20 So.3d at 630-632 (emphasis added) (internal citations omitted).

The Mississippi Supreme Court went on to find that any conceivable resulting prejudice from the prosecutor's remarks was cured by the trial judge's sustaining of defense counsel's objections and his *sua sponte* instructions to the jury to disregard them. *Id.* Although Tate maintains that the state court's analysis is flawed, he has articulated no credible bases in either his initial or amended petitions to refute the state court's well-reasoned conclusions. A plain reading of the prosecutor's remarks indicates that they were made in an effort to respond to the defense's theory of the case – that the victim had falsely accused Tate of molestation and had a propensity for lying. The prosecutor neither explicitly or implicitly referenced Tate's refusal to testify, nor did he instruct the jury to draw any conclusion from his failure to testify. *U.S. v. Yager*, No. 08 -40081, 2008 WL 4948608 (5th Cir. Nov. 20, 2008). Tate has thus failed to show that the prosecutor's "manifest intent" was to comment on his failure to testify or that the jury "naturally and necessarily" interpreted the comment as such. *Collins,* 972 F.2d at 1406. Although he maintains that the state appellate court failed to conduct the second inquiry, the test for

9

determining whether a prosecutor has improperly commented on a defendant's silence is a twofold alternative one.  That said, nothing of record indicates that the jury naturally and necessarily interpreted the prosecutor's remarks as a reference to Tate's failure to testify, especially in light of the trial court's curative instruction and the granting of Jury Instruction D-6.  It expressly instructed that "the defendant had a constitutional right to not testify, that the jury could not draw any inference from the defendant's failure to testify, and that the fact that the defendant did not testify should not in any way be considered by the jury during the course of its deliberations." *Tate*, 20 So.3d at 629.  Jurors are presumed to follow the court's instructions, and there is no apparent basis for finding that the jury did not do so here.  *Zafiro v. United States*, 506 U.S. 534, 540-41 (1993) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)).

For these reasons, Tate's request for habeas relief should be denied.  Mississippi's highest court held that the prosecutor's remarks were "a fair response to a claim made by the defendant or his counsel." *Robinson*, 485 U.S. at  32.  This conclusion was not contrary to, or an unreasonable application of, clearly established federal law.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3) of the *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, any party within 14 days after being served with a copy of this Report and Recommendation, may serve and file written objections.  Within 7 days of the service of

the objection, the opposing party must either serve and file a response or notify the District

Judge that he or she does not intend to respond to the objection.

The parties are hereby notified that failure to file timely written objections to the

proposed findings, conclusions, and recommendations contained within this report and

recommendation, shall bar that party, except upon grounds of plain error, from attacking

on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

the district court.  28 U.S.C. § 636, Fed. R. Civ. P. 72(b) (as amended, effective December

1, 2009); *Douglas v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th

Cir. 1996).

This the 27th day of November 2013.


                                        /s/  Linda R. Anderson
                                        UNITED STATES MAGISTRATE JUDGE